OSCAR SHACKLEFORD et al.

v.

MARY A. ELLIOTT.

*Opinion filed April 20, 1904.*

1. TRUSTS—*when resulting trust arises.* A resulting trust in favor of the wife arises where the husband purchases land with money furnished by the wife but takes title in his own name, contrary to the express intention of the wife and without her knowledge.

2. SAME—*what does not defeat resulting trust.* If the entire purchase price of land is in fact furnished by the wife, the fact that the bond for a deed, obtained by the husband in his own name without her knowledge, recites the giving of his personal notes, due on or before maturity, does not defeat the resulting trust.

APPEAL from the Circuit Court of Franklin county; the Hon. P. A. PEARCE, Judge, presiding.

E. E. DENISON, for appellants.

PILLOW & SMITH, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The appellee, Mary A. Elliott, formerly the wife of Henry L. Shackleford, now deceased, at the November term, 1903, of the Franklin county circuit court filed her bill for assignment of dower and partition of certain lands, being sixty acres, in said county. She alleged that on September 14, 1899, said Henry L. Shackleford died seized of the lands in question, leaving complainant,

formerly Mary A. Shackleford, (now Mary A. Elliott,) as his widow, and appellants, Oscar, William, Callie and Orvie Shackleford, and Lawrence Henry Shackleford, his only children and heirs-at-law.

Lawrence Henry Shackleford died in infancy, and was the child of complainant and said Henry L. Shackleford. The other mentioned children were the children of Henry L. Shackleford and a former wife, Ella Shackleford, and being infants, by next friend filed their answer to said bill, denying the interest of complainant in said land as in her bill alleged, and averring that of the forty acres (part of the said sixty acres mentioned in the bill) Henry L. Shackleford was seized in trust for his former wife, Ella Shackleford, the mother of appellants, and after her death he held the same in trust for said appellants. Appellants also filed their cross-bill, averring that in 1894 Lucretia Guthrie, mother of the said Ella Shackleford and grandmother of appellants, being desirous of making her daughter a gift of some land, gave her certain money, $200, in two installments of $100 each, which the said daughter, Ella Shackleford, gave to her husband, Henry L. Shackleford, and requested him to purchase for her the forty-acre tract in question; that of the $100 so first given Henry L. Shackleford he paid $50 as a cash payment on said purchase, the balance being used in improvements; that instead of taking a bond for a deed to his wife, the said Henry L. Shackleford caused one to be made in his own name, and that the wife supposed said bond was taken in her name; that afterwards the said Lucretia Guthrie gave to her daughter, on April 30, 1895, the balance of the purchase price for said land, who in turn gave it to her husband and requested him to finish paying for the same and obtain for her a deed; that the said Henry L. Shackleford did so apply the money but took the deed in his own name instead of his wife's, but without her knowledge or consent, and that by reason of such acts the said Henry L.

Shackleford held said lands in trust as above declared. The cross-bill further avers the death of Ella Shackleford, intestate, October 17, 1897, leaving the said Henry L. Shackleford, her husband, and appellants, her children, her only heirs-at-law; also stating that said Henry L. Shackleford afterwards married one Mary A. Pippy, who afterwards became Mary A. Elliott, the complainant in the original bill. The cross-bill further avers that the said forty acres descended, by the death of their mother, to appellants, and said Henry L. Shackleford only held the same in trust for them, and denies that the said Mary A. Elliott had any interest in the same, and prays that the court may decree the title in said land to be in said appellants. The cause was heard by the chancellor without the intervention of a jury, and a decree was entered dismissing the cross-bill and granting the relief prayed for in the original bill. This action of the chancellor the appellants assign as error, and prosecute this appeal.

Appellants contend that the evidence offered in support of their cross-bill proves conclusively that the forty acres of land in controversy was purchased by Henry L. Shackleford with the money belonging to his wife, Ella Shackleford; that he was sent to buy the land as her agent and fraudulently took the title in his own name; that an implied or resulting trust arose in favor of Ella Shackleford; that Henry L. Shackleford held the land in trust for his wife until her death, and afterward in trust for her children, the appellants. In support of the cross-bill appellants offered in evidence the deed to Henry L. Shackleford to the forty acres of land here in question, the consideration mentioned in the said deed being $150. Appellants also introduced the testimony of seven witnesses. This evidence of appellants is uncontradicted, defendants in the cross-bill offering no evidence except the bond for a deed to the land in question. This bond bears date November 21, 1894, and runs from the grant-

ors of the land to Henry L. Shackleford, and mentions in the condition that the said Shackleford had that day given said grantors two promissory notes, one for $50, due June 1, 1895, and one for $100, due one year after date, and upon the payment of said notes on or before maturity a deed to the lands described would be made.

In our judgment the evidence shows that in November, 1894, Lucretia Guthrie, the mother of Ella Shackleford, gave her said daughter $100 with which to buy land. It was intended as a gift, and was handed to her in the form of silver and paper money, in the home of Henry Shackleford, and in his presence. Said Ella Shackleford held the money for a while and afterwards gave it to her husband with the request that he purchase the land here in controversy for her. Henry Shackleford bought the forty acres, taking a bond for a deed in his own name. It is not clear whether, at the time of receiving this bond, any cash payment was made or not. The bond shows that two notes were given,—one for $50, due June 1, 1895, and one for $100, due one year after date, the notes being payable on or before maturity. There is evidence, however, that the $50 was paid in cash and the balance of the first $100 was used in improvements. There is also evidence to the effect that when Shackleford returned home he told his wife he had "her bond" for a deed to the land. She was a sickly woman and did not investigate the bond, but relied upon the statement that it was in her name. When the other payment became due Mrs. Guthrie again gave her daughter $100, which the daughter turned over to her husband to finish paying for the land. He returned and told her he had "her deed," putting it away in a trunk. The wife never investigated it herself, but relied upon the statements that it was hers, and knew no different until later on the husband requested her to join in a mortgage of this land, and when she thus discovered that the title was not in her she gave way to tears, and protested, in the husband's presence,

that the title was hers. Several witnesses testified to statements made by Henry Shackleford to the effect that this land was purchased with money furnished his wife by her mother, and that it was his wife's land and he intended her children to have it. There is also evidence to the effect that up to the time of the commencement of this suit the complainant in the original bill, Mary A. Elliott, also disclaimed any interest in said land, saying that her husband had told her it was bought with his first wife's money and belonged to her children.

Inasmuch as appellee offered no testimony in conflict with the testimony offered by appellants, it is not necessary for us to set out more fully the evidence in support of the cross-bill. Enough has already been stated, when uncontradicted, to clearly indicate that appellants were entitled to the relief sought by their cross-bill.

Appellee, however, contends that the recitals of the bond showed that no cash payment was made for the land, and that Henry L. Shackleford gave his individual notes therefor. The notes were payable on or before maturity, and the $50 note, if executed at all, may have been paid the same day of its execution. But whether paid then or not, the testimony is to the effect that it was paid with the money given Shackleford by his wife for the purchase of this land. There is no evidence that Shackleford ever put a cent of his own money into this purchase. His own admissions refute the contention that he did. There is evidence, uncontradicted, to the effect that he had no visible means with which to make this purchase. It is not shown that he ever even claimed that he did make the purchase with his own money. It can by no means be logically contended that the mere recitals in the bond are at all conclusive that a $50 note was given instead of a cash payment. The facts and circumstances disclosed by the record are in entire harmony with appellants' theory of the case and directly contrary to that of appellee.

209—22

Appellee, however, urges that the evidence shows that the purchase money for the land was furnished by the mother of Ella Shackleford, and hence there could be no resulting trust in favor of the mother of appellants. The record does not bear out this contention. While Lucretia Guthrie, the mother of Ella Shackleford, did testify that she furnished the money in question, she also said that she first gave it to her daughter as a gift, and that afterwards the daughter turned it over to her husband with a request that he purchase the land for her. The admissions of Henry L. Shackleford are also to the same effect.

It is next insisted by the appellee that the chancellor who entered the decree herein saw and heard the witnesses and his findings should not be disturbed. Where the testimony is very conflicting and requires to be weighed and balanced in order to determine its proper effect, under the well established rule such contention is of great force, but in a case like the one at bar, where there is little or no conflict, the rule does not apply.

As we read the record in this case, the entire purchase money for the forty acres here involved was furnished by Ella Shackleford, and with the distinct and declared intention that the purchase was to be for her benefit and the title to be taken in her name, and under such circumstances the law is too well settled to require the extended citation of authorities to support the conclusion that a resulting trust was established in favor of Ella Shackleford, and on her death descended to her children. *Fleming* v. *McHale*, 47 Ill. 282.

The decree herein will be reversed and the cause remanded to the circuit court of Franklin county, with directions to that court to grant the relief prayed in the cross-bill of appellants.    *Reversed and remanded.*